UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKEE CARTER, | No. C 06-7398 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT L. AYERS, JR., Warden, | |
| Respondent. | |

## INTRODUCTION

Markee Carter, a California prisoner, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision. This matter is now before the court for consideration of the merits of the petition and a motion for file a document under seal. For the reasons discussed below, the petition and motion will be denied.

## BACKGROUND

Carter's habeas petition challenges a prison disciplinary decision in 2004 in which he was found guilty of conspiracy to introduce a controlled substance into a penal institution and was assessed a penalty that included forfeiture of 180 days of behavioral time credits. The lone claim that remains for adjudication is Carter's claim that his right to due process was violated because there was insufficient evidence to support the disciplinary decision.

The disciplinary charges were based on the activities of three people: petitioner Carter, his cellmate Wesley Cotton, and Cotton's wife, Elsa. The evidence showed that Carter had

caused money to be sent to Elsa and that Elsa was later caught trying to smuggle marijuana into the prison during a contact visit with Cotton. The evidence also showed that, in between the sending of the money and the smuggling of the drugs, a telephone conversation between Cotton and Elsa had been recorded at the prison. During that telephone conversation, Elsa and Cotton talked about money and referred to Carter's "portion," Elsa expressed concern that Carter wanted her to send "250" to make a payment but he had only sent her "100" and she was unwilling to pay the difference, Cotton said he thought Carter sent "150," and then Cotton said he needed to see Elsa. Resp. Exh. 3, p. 8. Elsa complained to her husband, "I'm trying to make a profit" and that Carter was "cutting into it." Id. at 8-9. There apparently was no explicit mention of marijuana, or explicit statement by any of the people that Carter had sent the money to buy the marijuana. Resp. Exh. 2, p. 6.

The evidence at the disciplinary hearing included a report from the prison's Investigative Services Unit ("ISU") about its investigation. On October 30, 2003, the ISU initiated an investigation into Carter's possible involvement in a suspected conspiracy to introduce a controlled substance into the prison in which it was anticipated that the controlled substance would be brought in during a contact visit in Facility "D" visiting. Prison officials used the inmate monitoring and recording system to obtain confidential information that indicated that Carter was directly involved in the conspiracy. There also was evidence that Carter had sent money to an outside source. And there was evidence concerning the search of Elsa. A search warrant was obtained for Elsa Cotton on November 24, 2003. When Elsa approached the visitor's processing area at the prison on November 27, 2003, she was intercepted by ISU staff and subjected to an unclothed body search. During the search, she surrendered two condoms containing a leafy substance suspected to be marijuana. The substance seized from Elsa tested positive for the presence of marijuana. The substance seized from Elsa totaled 88 grams (i.e., about 3 ounces) in weight.

Carter offered a defense that he had sent money to Elsa to send to his attorney. Carter also submitted documentary evidence, including (1) an envelope addressed to "West-Side Criminal Law Group" postmarked November 8, 2003 or November 8 2003 in Santa Clarita,

2

California, (2) a postal money order dated November 8, 2003 payable to Westside Criminal Law Group, (3) a deposit ticket from Union Bank (which Carter describes as another money order) which appears to show a net deposit of $335 (from a $350.00 instrument less $15.00) dated 11/04/03 at the top but also bearing the notation "12/4/3 cashed" at the bottom, and (4) a January 19, 2004 "to whom it may concern" letter from P. Rizzo[1] at "West-Side Criminal Law Group" who stated that he received a $350.00 money order on November 9, 2003 "from Markee Carter addressed in his name by a third-party. The mail was sent from Santa Clarita, CA. evidentally [sic] by Mr. Carter's cellmate's wife, as I recall Mr. Carter explaining to me that he did not want to trouble his family for these incidental expenses. The purpose of this fee was to cover expenses in connection with his presently pending habeas corpus action." Petition, unnumbered exhibit. During the course of his inmate appeal (but apparently not at the hearing) Carter presented a copy of his inmate trust account showing a payment of $9.89 to UPS on October 23, 2003, which he asserted showed his mailing of a big box of legal work to his lawyer to corroborate his story about the reason for the sending of the money.

Carter exhausted his state remedies for the disciplinary decision of January 12, 2003. The Imperial County Superior Court rejected his habeas petition in a reasoned decision. The California Court of Appeal also rejected Carter's habeas petition in a reasoned decision. See Resp. Exh. 9. The California Supreme Court summarily denied his habeas petition.

Carter then filed this action for a writ of habeas corpus. After reviewing the petition for writ of habeas corpus, the court issued an order to show cause. Respondent filed an answer and Carter filed a traverse. The matter is now ready for a decision on the merits.

---

[1] Carter identifies Rizzo as an attorney, but the return address on an envelope from "West-Side Criminal Law Group" identifies Rizzo as a "research consultant." Resp. Exh. 7, 22nd page.

**DISCUSSION**

A.  The Petition

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams (Terry) v. Taylor, 529 U.S. 362 (2000).

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. See Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).  The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. at 564-7. The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20  (9th Cir. 1994).

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in Wolff unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. Id. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. Id.  This standard is considerably lower than that applicable in

4

criminal trials. Id. at 456.

The discipline Carter received here included a loss of 180 days of credit as well as prohibition of visits for one year, followed by two years of only non-contact visits. Respondent does not dispute that the discipline imposed was sufficiently serious to require due process before it could be imposed. The only issue in Carter's habeas petition is whether the evidence was sufficient to support the decision.

The evidence relied upon by the hearing officer in finding Carter guilty of conspiracy to traffic and distribute a controlled substance satisfies the very modest Superintendent v. Hill "some evidence" standard. The evidence – that Carter sent money to Elsa, that Elsa thereafter described the money as Carter's portion of a money-making endeavor and that he had not sent in enough money for his portion, and that within a month of her statements Elsa was caught trying to smuggle about three ounces of marijuana into the prison during a contact visit with her husband who was Carter's cellmate – was enough to permit the disciplinary hearing officer to find Carter guilty of conspiracy to traffic and distribute a controlled substance.

Carter did offer a defense, but the fact that an inmate offered a defense did not mean that the disciplinary officer had to accept it as true. The rejection of his defense was reasonable, as Carter's explanation about the funds did not make much sense. He asserted that the money was sent to Elsa to send to his attorney on his behalf, yet failed to explain why the money was not sent directly to the attorney. Also, he seemed uncertain whether he or some third party caused the money to be sent; his uncertainty and his failure to name the third party make the story more suspicious. His defense also did not address Elsa's comments in the telephone conversation that she was in a money-making venture and that Carter was cutting into her profits by not sending in his portion.

Two evidentiary problems concerned the court and prompted it to request a copy of the January 8, 2004 memorandum. Having seen the memorandum, the court's concern is not resolved but the court also concludes that the evidentiary problems do not undermine the conclusion that there is some evidence to support the disciplinary decision. The first problem concerns the following statement: "Petitioner was specifically identified by a confidential source

as the person who sent money to another inmate's spouse *in order to* distribute, traffic, and sell a controlled substance in the prison." This statement, or a similar one, appears in Respondent's Answer (at page 2), in the disciplinary hearing officer's recitation of the January 8, 2004 confidential memorandum, see Resp. Exh. 2, p. 6,[2] and even in the state court opinion.[3] The problem with this statement is that it joins evidence (i.e., that Carter sent money to Elsa) with an inference (i.e., that the money was sent to distribute, traffic and sell a controlled substance) trying to suggest that there was direct proof of both. By putting evidence and inference on the same footing, the case against Carter is suggested to be stronger than it actually was. This problem does not, however, require that the decision be set aside because the inference (i.e., that the money was sent to pay for the marijuana) was a reasonable one in light of all the evidence.

The second problem is the gap in the evidence as to how it was determined in advance of the search of Elsa that drug smuggling was afoot. The only confidential source that was disclosed to Carter was the January 8, 2004 memorandum, but neither that memorandum or the confidential disclosure form for it explained how prison officials came to believe the money was intended for drugs. See Resp. Exh. 2, p. 9. The January 8, 2004 memorandum and the Crime / Incident Report do not quote any statement from the telephone conversations between Elsa and Cotton that show a mention of drugs. In addition to drugs, weapons and other things are occasionally smuggled in to prisons, so one wonders how prison officials knew that this financial transaction concerned drugs. However, regardless of whether investigators knew whether the money transaction involved drugs before Elsa showed up for her visit, by the time the

---

[2] In the disciplinary decision the hearing officer summarized the January 8, 2004 memorandum as having "Identified inmate CARTER, E-57454, specifically as the person who sent monies to inmate COTTONS' wife, Elsa Cotton. The monies were mailed for the purpose of conspiring to distribute/traffic and sales of a controlled substance(s) into a State Prison." Resp. Exh. 2, p. 6.

[3] The state court of appeal found that due process was satisfied because there was some evidence to support the decision. The state court of appeal explained: "Information from a reliable confidential source that Carter sent money to Elsa for the purpose of conspiring to distribute and sell a controlled substance in prison, phone calls between Elsa and the cellmate discussing the money Elsa should receive from Carter to make the payment and the fact that authorities found contraband on Elsa provide 'some evidence' to support the finding." Resp. Exh. 9, Cal. Ct. App. Opinion, p. 2.

6

disciplinary hearing occurred, the hearing officer could reasonably connect her contraband with the financial discussion that occurred a month earlier between her and her husband. Also, even if there was a confidential source that provided a tip that Carter and Cotton were going to engage in a conspiracy to distribute drugs, the procedural protections required by Wolff and its Supreme Court progeny do not include a requirement that the source of confidential information be disclosed to the inmate.

Although these two evidentiary problems leave the court with the distinct impression that prison officials did not disclose the full story of their investigation, the evidence to support the disciplinary decision was constitutionally sufficient. Carter's right to due process was not violated by prison officials' decision to find him guilty or to assess him a credit forfeiture of 180 days. He is not entitled to the writ of habeas corpus.

B.  Motion To File Document Under Seal

The court earlier ordered respondent to supplement the record with the January 8, 2004 memorandum and explained that if respondent considered the memorandum to be confidential, he could move to file it under seal in compliance with Local Rule 79-5. Respondent then submitted the document with a motion to file the document under seal. Although the court is sensitive to prison security concerns, respondent's security concerns do not appear to be genuine under the circumstances. Specifically, the January 8, 2004 memorandum does not appear to include any information that is not mentioned in the Crime / Incident Report attached to respondent's answer. See Resp. Exh. 3, pp. 8-9. The memorandum is less specific than the Crime / Incident Report in that the latter quotes parts of the telephone conversation. The memorandum also does not identify any confidential source by name nor does it appear to disclose any sort of surveillance other than the phone monitoring already described in the Crime / Incident Report. Since it appears that everything in the allegedly confidential memorandum is already in the public record, the court DENIES respondent's motion to file the January 8, 2004 memorandum under seal. (Docket # 8.) Respondent may retrieve the January 8, 2004 memorandum from the clerk within three business days of the date of this order. See Local Rule

7

79-5(e). If the document is not retrieved by that deadline, the clerk will dispose of it.

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The motion to file a document under seal is denied. (Docket # 8.) The clerk shall close the file.

IT IS SO ORDERED.

Dated: August 1, 2008

_____
SUSAN ILLSTON
United States District Judge